## S12Y1781. IN THE MATTER OF SIDNEY JOE JONES.

(744 SE2d 6)

PER CURIAM.

In 2011, Sidney Joe Jones (State Bar No. 734128)[1] was convicted of eleven misdemeanors, including ten violations of OCGA § 42-4-13 (e), which prohibits, among other things, the carrying of items for an inmate across the guard line at a jail without the knowledge and consent of the jailer.[2] For these misdemeanors, Jones was sentenced to probation for eleven consecutive terms of twelve months each. The State Bar then commenced these disciplinary proceedings, alleging that Jones was subject — by virtue of his misdemeanor convictions — to discipline under Rule 8.4 (a) (3) of the Georgia Rules of Professional Conduct. See Bar Rule 4-102 (d). A lawyer subject to discipline under Rule 8.4 (a) (3) may be disbarred.

Following an evidentiary hearing, the special master[3] issued his report and recommendation, in which he found that Jones was subject to discipline under Rule 8.4 (a) (3). The special master also found, however, several mitigating circumstances, and he recommended that Jones not be disbarred, but instead that he only be suspended from the practice of law for six months.[4] This matter is now before the Court on the report and recommendation of the special master, a report and recommendation to which both Jones and the State Bar have taken exception. Jones contends that his misdemeanor convictions do not involve moral turpitude and, therefore, do not subject him at all to discipline under Rule 8.4 (a) (3). The State Bar, on the other hand, urges us to reject the sanction recommended by the special master and instead to disbar Jones.

1. A lawyer is subject to discipline when he, among other things, is "convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law." Ga. Rules of Professional Conduct, Rule 8.4 (a) (3). Here, the special master concluded that the ten misdemeanor violations of OCGA § 42-4-13 (e) of which Jones was convicted involve moral turpitude and relate to his fitness to practice law, and upon our review of the record, we agree. The convictions in this case involve Jones smuggling

---

[1] Jones was admitted to the Bar in 2008. Jones also is licensed to practice law in South Carolina, where he was admitted to practice in 2007.

[2] The eleventh misdemeanor was disorderly conduct in violation of OCGA § 16-11-39. Jones was convicted of these misdemeanors in the Superior Court of Richmond County upon his entry of a guilty plea.

[3] Upon the request of the State Bar for the appointment of a special master, see Bar Rule 4-106, we appointed Matthew L. Waters.

[4] The special master also recommended that the suspension commence as of December 20, 2011.

contraband to a client in the Richmond County Jail. Apparently motivated by a misguided sense of sympathy for his client, Jones smuggled tobacco or tobacco-related items to his client on several occasions, and on at least one occasion, Jones smuggled packages with unknown contents, although Jones believed that these packages contained tobacco as well.[5] Tobacco was contraband in the jail, and Jones knew that his client could get in trouble for having possession of such contraband. When Jones was caught passing contraband to his client under a table in a holding cell, he was dishonest when confronted by law enforcement officers, claiming that he "did not know where it come from, did not know what it was, [and did not know] how [the contraband] got in there."

This Court has undertaken to define "moral turpitude" in a variety of contexts. With respect to the impeachment of a witness by a prior conviction, we have held that crimes of moral turpitude include crimen falsi, *Shaw v. State*, 102 Ga. 660, 671 (29 SE 477) (1897), that is, misdemeanors involving dishonesty or the obstruction of justice. *Lewis v. State*, 243 Ga. 443, 445 (254 SE2d 830) (1979). In a divorce case, we have said that moral turpitude means "everything done contrary to justice, honesty, . . . or good morals. . . . All crimes embraced within the Roman[ ] conception of the crimen falsi involve turpitude . . . ." *Holloway v. Holloway*, 126 Ga. 459, 460 (55 SE 191) (1906). In a case concerning the eligibility of one to hold public office, we explained that a crime of moral turpitude "is an act . . . contrary to the accepted and customary rule of right and duty between man and man." *Huff v. Anderson*, 212 Ga. 32, 34 (90 SE2d 329) (1955) (citation and punctuation omitted). We previously have relied upon these definitions in lawyer disciplinary proceedings.[6] See, e.g., *In the Matter of Brooks*, 263 Ga. 530, 531 (436 SE2d 493) (1993).

---

[5] Although the contents of these packages were never identified definitively, one deputy sheriff testified that one package, he believed, contained marijuana.

[6] We note that the State Bar cites *In the Matter of Williams*, 266 Ga. 132 (464 SE2d 816) (1996), for its definition of "moral turpitude," but *Williams* was decided under the old Code of Professional Responsibility, which was supplanted in 2001 by our adoption of the Georgia Rules of Professional Conduct. Standard 66 of the old Code of Professional Responsibility provided that a lawyer was subject to discipline upon conviction of a misdemeanor involving moral turpitude, without any explicit requirement that such a misdemeanor relate to his fitness to practice law. Accordingly, in *Williams*, we construed "moral turpitude" so as to limit its application in the lawyer-discipline context to acts that bear "a direct relationship to the attorney's fitness to practice law." 266 Ga. at 132. Rule 8.4 (a) (3) of the Georgia Rules of Professional Conduct, however, lists "moral turpitude" and "underlying conduct [that] relates to the lawyer's fitness to practice law" as separate and discrete elements. As such, the *Williams* definition of "moral turpitude" has been abrogated by the adoption of the Georgia Rules of Professional Conduct.

Here, we must conclude that the convictions for misdemeanor violations of OCGA § 42-4-13 (e) involve moral turpitude. As a matter of law, these crimes require the carrying of items into a secured facility without the knowledge and consent of the custodian of the facility, and they necessarily involve, therefore, an element of deceit and dishonesty. And when such crimes are committed by a lawyer exercising a special privilege to visit with a client in a private area of the jail without physical barriers — a privilege meant to facilitate attorney-client communications and to protect the confidences of the client — the lawyer breaches the public trust that inheres in the office of attorney.

Moreover, jails and correctional facilities can be dangerous and violent places — they often house, after all, dangerous and violent individuals — even with the best of security measures and protocols. And the introduction of contraband into such a facility tends to undermine those security measures and protocols. As a deputy sheriff explained in these proceedings, "any type of contraband, any things that are restricted from an inmate standpoint can further create problems on the floor," and secreting contraband into a jail "would definitely break down the security or integrity of the internal security structure." Accordingly, these crimes also necessarily reflect a disregard for the security of the jail and the safety of those who work, or are incarcerated, in it.

In this case, Jones acted deceitfully, dishonestly, in breach of his trust as an attorney, and in a way that threatened the security of the Richmond County Jail. When Jones smuggled contraband to his client, he secreted the contraband and passed it covertly to his client. He did so knowing that it was against the rules of the jail and with the understanding that he could be making matters worse for his client, if the client were found in possession of the contraband. When Jones himself was caught, he lied to law enforcement and disclaimed any knowledge of the contraband. On at least one occasion, Jones passed contraband to his client without even knowing the nature of the contraband. And Jones smuggled contraband to his client on ten separate occasions. All these things reflect dishonesty, amount to an obstruction of the administration of justice, and in light of the dangers that they posed for his client, other inmates, and the jailers, involve a disregard for the safety of others. *Lewis*, 243 Ga. at 445; *Huff*, 212 Ga. at 34; *Holloway*, 126 Ga. at 460. We have no hesitation in concluding that Jones has been convicted of misdemeanors involv-

ing moral turpitude, and he is, therefore, subject to discipline under Rule 8.4 (a) (3).[7]

2. We now turn to the appropriate discipline in this case. In mitigation, the special master found that Jones has no prior disciplinary record, that he has no other criminal history, and that he has expressed remorse for his crimes.[8] As additional mitigating circumstances, Jones urges that he acted without a selfish motive, that he has taken responsibility for his wrongdoing since initially lying to law enforcement officers, and that he already has been punished at the bar by his interim suspension from the practice of law in South Carolina. We acknowledge these circumstances, but they are simply insufficient, in our view, to mitigate the repeated deceit, dishonesty, breaches of trust, and disregard for safety and the security of the jail that are reflected in his crimes.[9] We agree with the State Bar that these crimes — especially considering that Jones committed these crimes repeatedly, on *ten* separate occasions — warrant disbarment.

Accordingly, it is hereby ordered that the name of Sidney Joe Jones be removed from the rolls of persons authorized to practice law in the State of Georgia. Jones is reminded of his duties pursuant to Bar Rule 4-219 (c).

*Disbarred. All the Justices concur.*

DECIDED JUNE 3, 2013 —
RECONSIDERATION DENIED JULY 1, 2013.

*Paula J. Frederick, General Counsel State Bar, Rebecca A. Hall, Assistant General Counsel State Bar*, for State Bar of Georgia.
*Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, for Jones.

---

[7] Jones does not dispute that the conduct underlying his convictions "relates to [his] fitness to practice law," and with good reason, considering that his crimes involved a client and that the privilege he enjoyed as a lawyer — the privilege to meet with an incarcerated client privately and without physical barriers — facilitated his commission of the crimes.

[8] The special master also found that Jones was relatively inexperienced in the practice of law, but we do not understand how that amounts to a mitigating circumstance here. Whether a lawyer has been practicing for thirty years, or only for a few days, he ought to know that an attorney should not smuggle contraband to a client in jail. This is not the sort of case in which experience in the practice of law has any relevance to the misconduct.

[9] The court that sentenced Jones for his misdemeanor convictions seems to have been equally troubled by his conduct, inasmuch as it sentenced him to eleven *consecutive* terms of twelve months each.