2017 OK 24

**STATE of Oklahoma, EX REL. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**L. Caroline DRUMMOND, Respondent.**

**SCBD No. 6368, SCBD No. 6444 (combined for purposes of published opinion)**

Supreme Court of Oklahoma.

Decided: 03/28/2017

---

20. 5 O.S. 2011 ch.1, app. 5, R. 4, 3.

Gina Hendryx, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Gary A. Rife, Rife, Walters, Stanley & Natarajan L.L.P., Oklahoma City, Oklahoma, for Respondent.

GURICH, V.C.J.

### Facts and Procedural History

### Rule 7 Proceeding

¶1 L. Caroline Drummond[1] was employed as counsel for Michael Ross Kettles in connection with Tulsa County District Court Case No. CF-2013-4788. Kettles was incarcerated in the David L. Moss Criminal Justice Center. The pair had an existing relationship, which originated in 1997, when Drummond was Kettles' English teacher at Skiatook High School. In early 2015, the two reconnected on social media and their relationship became more personal.

¶2 According to Drummond, Kettles began requesting access to a cell phone. After multiple requests from Kettles, Drummond finally relented. After obtaining a phone from her carrier, Drummond scheduled a meeting with Kettles at the Tulsa County jail facility. As an attorney, she was permitted to have

---

1. Drummond was admitted to the Oklahoma Bar    Association in September 2001.

direct contact visits with clients. During their conference Drummond, covertly supplied Kettles with the cell phone and charger. The phone was placed in Drummond's legal file and transferred to Kettles by handing him the folder. Drummond also provided Kettles with cigarettes. The illicit items were subsequently discovered by detention officer Jessica Harris on May 15, 2015. During her confiscation of the contraband, Kettles assaulted Officer Harris to prevent her from confiscating the items.

¶ 3 Tulsa County Sheriff employee Corporal Bradley Philpott initiated an investigation to determine the source of the smuggled objects located in Kettles' cell. Corporal Philpott subpoenaed records from AT&T and had a forensic expert examine the contents of the phone. He also requested an interview with Drummond. After delaying for several weeks, Drummond finally met with Corporal Philpott on June 8, 2015. She confessed to providing Kettles with all of the contraband.

¶ 4 On July 30, 2015, a criminal matter was filed against Drummond in *State of Oklahoma v. L. Caroline Drummond*, Tulsa County District Court Case No. CF-2015-3921. The district attorney charged her with one felony count of bringing contraband into a penal institution in violation of 57 O.S.Supp. 2012 21. On February 23, 2016, Drummond pled guilty to the felony. An order deferring sentencing for two years was filed the following day. Review of the matter is scheduled for February 12, 2018.

¶ 5 On February 25, 2016, the Oklahoma Bar Association presented this Court with a certified copy of an Order of Deferred Sentence in the above-referenced criminal proceeding. A disciplinary case was initiated pursuant to Rule 7.2 of the Rules Governing Disciplinary Proceedings.[2] In accordance with RGDP Rule 7.3, we entered an order immediately suspending Drummond from the practice of law on March 7, 2016. The order further directed Drummond to "show cause, if any, no later than March 18, 2016, why [the] order of interim suspension should be set aside." In response, Drummond filed a pleading waiving any challenge to the interim suspension and requesting a hearing to offer evidence pertaining to final disciplinary action. We issued an order appointing a PRT panel and scheduling a hearing for April 19, 2016, to allow presentation of evidence on the issues of mitigation and appropriate discipline.

¶ 6 Subsequent to the interim suspension, Drummond continued to engage in the practice of law. Testimony indicated Drummond met with a divorce client, Gary Vance, on March 15 and 21, 2016, in preparation for an upcoming mediation. On March 24, 2016, Drummond forwarded correspondence to opposing counsel, her client, and the designated mediator. The letter failed to mention the suspension order, identified Drummond as an attorney, and continued to advocate her client's position in the divorce proceeding. Drummond filed a *sworn affidavit* in this Court on March 28, 2016, attesting to her withdrawal from "all cases pending in any tribunal." *The next day, on March 29, 2016, Drummond appeared for the scheduled mediation with her client, who had driven to Oklahoma City from Pawnee, Oklahoma.* After opposing counsel revealed Drummond's suspension, the mediator prohibited her from participating any further in the session. Vance was forced to conduct the mediation without counsel. At no time prior to the March 29 mediation did Drummond inform Vance she had been suspended.[3] An exhibit presented by the OBA indicates Drummond did not even file a motion to withdraw in the Vance divorce matter until April 4, 2016— one week after filing her RGDP Rule 9.1 affidavit in this Court.

¶ 7 A hearing before the PRT was held on April 19, 2016. The panel report recommended Drummond be suspended for a period of one-year, effective from the date of

---

2. 5 O.S.2011, ch. 1, app. 1-A.

3. Drummond claimed to have sent a letter prior to the March 29, 2016 mediation, notifying Vance of her suspension. A copy of the letter was not produced at the first PRT hearing. The undisputed testimony during the first PRT hearing

reflects two meetings in-person with Vance prior to the mediation. Vance said he first learned of Drummond's suspension at the mediation and was both surprised and devastated. Drummond's testimony regarding the purported letter informing Vance of her suspension is not credible.

interim suspension. Additionally, the PRT recommended Drummond be monitored by the OBA following reinstatement through the remainder of her deferred sentence. The panel also suggested she participate in the Lawyers Helping Lawyers program. Both Drummond's and the OBA's briefs to this Court endorsed the PRT report and recommendation.

### *Rule 6 Proceeding*

¶ 8 On September 6, 2016, while the Rule 7 case was pending in this Court, the OBA filed a second proceeding against Drummond. The new case was brought pursuant to Rule 6 and asserted multiple violations of the Oklahoma Rules of Professional Conduct, including, but not limited to: failing to act with reasonable diligence and promptness; failing to properly communicate with her client; commingling client funds with her operating account; misappropriating client funds for her own personal use; failing to maintain a client trust account; acting with dishonesty, deceit and misrepresentation; failing to sufficiently cooperate and respond to the OBA grievances; and engaging in the unauthorized practice of law. The allegations of misconduct in the Rule 6 Complaint occurred prior to Drummond's guilty plea and deferred sentence.

¶ 9 In September or October of 2015, Drummond was hired by Marie Cortez to assist with resolving an attorney fee dispute between Cortez and attorney Duane Riffe. Cortez was the maternal grandmother and legal guardian of minor child A.M. An automobile accident had claimed the life of A.M.'s mother, Samantha Ruvancalba.[4] Riffe originally represented Cortez in the matter. He helped secure insurance settlement proceeds of $ 25,000.00 and $ 50,000.00, which were payable to A.M. from two separate policies.

---

4. Ruvancalba was A.M.'s mother and Cortez' daughter. She was involved in a fatal single vehicle accident in Tulsa County. After obtaining insurance proceeds for the vehicle in which Ruvancalba was a passenger, Riffe brought a third-party action against Daniel J. McDonald, the individual who allegedly caused the car wreck. Ultimately, McDonald's insurer agreed to tender policy limits of $ 50,000.00.

5. An OBA investigator testified that the discrepancy between the $ 30,000.00 owed to A.M. and

According to testimony before the PRT, no written attorney client contract was executed by Cortez and Riffe. Riffe asserted an attorney's lien against the proceeds from the $ 50,000.00 policy, and the matter was set for hearing in Tulsa County District Court Case No. CJ-2014-612.

¶ 10 On October 13, 2015, an order was filed in the Tulsa County case, which directed payment of attorney fees/costs to Riffe in the amount of $ 20,000.00; and the order further directed placement of the $ 30,000.00 balance in a "federally insured account at Arvest Bank for the benefit of A.M., a minor." Drummond received the $ 30,000.00 settlement check from Riffe on behalf of A.M. The check was payable to both Marie Cortez and Caroline Drummond. In violation of the trial court order, Drummond endorsed the instrument by signing "Marie Cortez by C. Drummond," and deposited the monies into her law firm operating account. To compound the problem further, Drummond did not promptly tender payment of the funds to Cortez or transfer the money to an account for A.M. Instead she paid personal and business expenses out of her operating account which depleted the monies earmarked for A.M.

¶ 11 On December 7, 2016, Drummond and Cortez opened a trust account for A.M. at Chase Bank. Drummond issued a check for $ 28,400.00, payable to Cortez on behalf of the minor child. However, because Drummond had squandered most of the settlement funds, the check was returned due to insufficient funds.[5] Cortez attempted to contact Drummond for several months to inquire about the bounced check, but Drummond largely ignored these efforts. In addition to a charge for the returned check, A.M.'s Chase account began accumulating monthly service fees.[6] On January 28, 2016, Drummond final-

---

the $ 28,400.00 check written by Drummond was for $ 1,600.00 of court approved expenses owed to Ms. Cortez.

6. The OBA investigator testified these fees were being generated because the amount held in A.M.'s account did not exceed the $ 15,000.00 minimum balance to avoid monthly service charges.

ly deposited $ 5,000.00 into A.M.'s Chase account, however, the check was written on Drummond's personal bank account.

¶ 12 In early January 2016, Drummond made a $ 6,000.00 wire transfer from the Drummond Law account to an account owned by Cortez' niece, Cynthia Ocha. Cortez testified that she had requested this transfer for the purchase of an automobile. She further indicated that Drummond's transfer of the money was to be kept secret. Acknowledging it would have been unlawful to withdraw any amount from A.M.'s monies without a court order, Drummond attempted to re-characterize the $ 6,000.00 as a loan or an advance against a probable personal injury settlement Cortez was expecting in an unrelated personal injury lawsuit, *Cortez v. David L. Landers Trucking, LLC*.[7] In February 2016, Drummond received a settlement check from the trucking company's claims management agent in the amount of $ 21,-116.51. Once more Drummond deposited the check into her law firm operating account.[8] Subsequently, a check was made payable to Cortez in the amount of $ 9,106.42, representing the client's purported share of the settlement.[9]

¶ 13 Cortez filed a grievance with the OBA on April 11, 2016. The grievance was forwarded to Drummond's official roster address on April 22, 2016. In accordance with RGDP Rule 5.2, the OBA requested a response to the grievance from Drummond within twenty (20) days. Drummond did not submit a timely response as required by Rule 5.2. On May 18, 2016, a second request for a response to the grievance was delivered to

Drummond at her official roster address. The certified letter was returned unclaimed. Ultimately, the grievances were served on Drummond by private process server on June 19, 2016. Drummond did not cooperate with the investigation and did not provide a written response to the grievances until after the OBA's Complaint was filed in this case.[10]

¶ 14 In addition to the Cortez grievance, the OBA alleged in its Complaint that Drummond had engaged in the unauthorized practice of law while suspended under this Court's Order of Immediate Suspension filed March 7, 2016.[11] Testimony from Tulsa Police Department Officer Brad Blackwell corroborated the OBA's allegations. Specifically, Officer Blackwell testified that on May 5, 2016, Drummond appeared at the scene of a drug arrest being conducted by officers with the TPD. Officers had detained two suspects. Drummond had been contacted by one of the suspect's mother. She approached the officers and identified herself as an Oklahoma licensed attorney. Officer Blackwell testified that Drummond presented her OBA membership card, a card from the American Bar Association, and her Oklahoma Driver License. Not only did Drummond identify herself as a licensed attorney, but she also questioned the officers about their probable cause for the arrest.

¶ 15 On December 15, 2016, the case was presented to the Professional Responsibility Tribunal. Testimony was taken from five witnesses, including Drummond. Initially, Drummond did not appear for the 9:00 a.m. hearing as scheduled; however, she did appear at 10:13 a.m.[12] All of the witnesses were

7.  Tulsa County Case No. CJ-2015-370.

8.  Records indicate the check was deposited on February 18, 2016, into the Caroline Drummond PLLC operating account.

9.  The record is not entirely clear as to how Drummond computed this payment amount. She recalled agreeing to represent Cortez in the personal injury case on a one-third contingency basis. Drummond testified that she withheld $ 6,000.00 from the settlement amount paid by Landers Trucking to recoup the January wire transfer. Cortez testified Drummond withheld a fee of $ 2,500.00 for representation on a DUI case. A settlement statement was prepared by Drummond to account for the $ 9,106.42 paid to

Cortez. The statement does include the $ 2,500.00 DUI case fee; however, it does not include the $ 6,000.00 sum. See Complainant's Exhibit 22.

10.  Drummond filed an Answer on October 21, 2016.

11.  The allegations raised in the OBA Complaint relating to the unauthorized practice of law do not include the violations which occurred at the Vance divorce mediation.

12.  Drummond informed the OBA and PRT that her car had been "stolen or taken" the morning of the scheduled disciplinary proceeding. Tr. Dec. 15, 2016, pp. 13-14.

presented by the OBA, and Drummond failed to present any mitigating evidence, other than her own self-serving testimony. One day after the PRT hearing, Drummond had a cashier's check issued payable to A.M. in the amount of $ 23,672.00. There is nothing in the record before this Court to indicate whether the cashier's check was delivered to Cortez or deposited in an appropriate account for A.M.'s benefit.

¶ 16 The PRT filed its report with this Court on January 12, 2017. Therein, the panel concluded Drummond had violated ORPC Rules 1.3, 1.4, 1.15, 5.5 and 8.4. The panel also believed the evidence demonstrated violations of RGDP Rules 1.3 and 5.2. After weighing the testimony and exhibits, the PRT recommended Drummond be disbarred. The OBA filed its Brief in Chief on February 1, 2017. Respondent Drummond did not file an answer brief.

### Standard of Review

¶ 17 As we have announced in prior decisions, "[t]he ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters." State of Okla. ex rel. Okla. Bar Ass'n v. Cox, 2011 OK 73, ¶10, 257 P.3d 1005, 1008 quoting State of Okla. ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶2, 71 P.3d 18, 21. Factual and legal determinations of the PRT are not binding on us, and any recommendations are merely advisory. Id. We must ensure the OBA has established charges of misconduct by clear and convincing evidence. State of Okla. ex rel. Okla. Bar Ass'n v. Mansfield, 2015 OK 22, ¶14, 350 P.3d 108, 113.

¶ 18 RGDP Rule 7 provides a mechanism for conducting disciplinary proceedings on a summary basis. This provision is invoked when a lawyer "has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agree-

ment in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law." RGDP Rule 7.1. It is commenced by submission of certified copies of the conviction or deferred sentence to the Chief Justice. RGDP Rule 7.2. A deferred sentence is deemed conclusive evidence of an attorney's commission of criminal act(s) in a disciplinary case initiated under RGDP Rule 7. Id.; see also State of Okla. ex rel. Okla. Bar Ass'n v. Kerr, 2012 OK 108, ¶3, 291 P.3d 198, 199.

¶ 19 As in other bar disciplinary matters, we review each aspect of a Rule 7 proceeding de novo. State of Okla. ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42, ¶4, 304 P.3d 453, 454. A Rule 7 case requires our determination of two principal issues: 1) whether an attorney's conviction(s) or deferred sentence(s) demonstrate an unfitness to practice law, and if so, 2) the appropriate level of discipline based on all facts and circumstances. Id. ¶2, 304 P.3d at 454. RGDP Rule 7.3 requires us to immediately issue an order suspending the attorney on an interim basis. Rule 7.3 further provides that upon a showing of good cause, this Court may set aside the order of temporary suspension.

### Rule 7

¶ 20 Our task in Rule 7 proceedings is to evaluate the particular criminal acts to determine whether they demonstrate an unfitness to practice law, and if so, impose the appropriate discipline. Implicitly, the order of interim suspension carries with it a finding of unfitness to practice law; however, we are obliged to again weigh the criminal conduct, together with all evidence bearing on the commensurate level of discipline. Cooley, ¶11, 304 P.3d at 455.

¶ 21 While a criminal conviction does not, *ipso facto*, establish an attorney's unfitness to practice law under RGDP Rule 7, our decisions in such disciplinary cases are guided by Rule 8.4 of the Oklahoma Rules of Professional Conduct.[13] ORPC Rule 8.4(b)

---

**13.** 5 O.S.2011, ch. 1, app. 3-A. Rule 8.4 provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

defines as professional misconduct, any criminal act which reflects adversely on an attorney's "honesty, trustworthiness, or fitness as a lawyer." State of Okla. ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, ¶7, 275 P.3d 133, 136. The comments to Rule 8.4 are illustrative:

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, *dishonesty, breach of trust*, or *serious interference with the administration of justice* are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. (emphasis added).

██ ¶ 22 A criminal conviction or deferred sentence does not require an automatic finding of unfitness. State of Okla. ex rel. Okla. Bar Ass'n v. Bernhardt, 2014 OK 20, ¶20, 323

P.3d 222, 226. Drummond pled guilty to the felony charge of bringing contraband into a penal institution. This offense involved dishonesty and was a flagrant abuse of Drummond's attorney status. Her actions placed the safety of Tulsa County detention officers and others at direct risk of imminent harm. Unquestionably the criminal transgressions in this case implicate Drummond's fitness as an attorney and are a violation of ORPC Rule 8.4. see e.g., In re Jones, 293 Ga. 264, 744 S.E.2d 6, 7-9 (2013) (holding misdemeanor convictions for delivering contraband to inmate were violations of GRPC Rule 8.4 and warranted disbarment) [14]; Attorney Grievance Com'n of Maryland v. Howell, 434 Md. 1, 73 A.3d 202, 206-207 (2013) (finding violation of MLRPC Rule 8.4 when attorney mailed contraband to inmate).

### *Rule 6*

¶ 23 Evidence presented in the Rule 6 proceeding also conclusively established numerous violations of the ORPC and RGDP. We conclude the record contains clear and convincing evidence Drummond violated RGDP Rule 5.2 and ORPC Rules 1.3, 1.4, 1.15, 5.5 and 8.4.

██ ¶ 24 Drummond's handling of client funds in this case was deplorable. She failed to maintain a client trust account, twice commingled client settlement funds with her business account, and then used the proceeds for personal expenses.[15] Drummond's theft of the funds is even more egregious when considering they were designed to provide for a

---

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

14. The Jones Court explained the gravity of the criminal offense:

As a matter of law, these crimes require the carrying of items into a secured facility without the knowledge and consent of the custodian of the facility, and they necessarily involve, therefore, an element of deceit and dishonesty. And

when such crimes are committed by a lawyer exercising a special privilege to visit with a client in a private area of the jail without physical barriers—a privilege meant to facilitate attorney-client communications and to protect the confidences of the client—the lawyer breaches the public trust that inheres in the office of attorney. * * *

All these things reflect dishonesty, amount to an obstruction of the administration of justice, and in light of the dangers that they posed for his client, other inmates, and the jailers, involve a disregard for the safety of others.
Jones, at ¶8.

15. Drummond acknowledged using A.M.'s money for personal and business expenses. For example, she admitted spending $ 5,000.00 from A.M.'s money to pay her criminal defense attorney.

two-year old child after his mother's tragic death. These actions were not only clear violations of ORPC Rule 1.15, they were callous and heartless.[16] This Court will not tolerate attorneys who show total disregard for court mandates, particularly orders directing attorneys to safeguard moneys intended for minor children. Additionally, we will not tolerate attorneys who fail to keep client money and property safeguarded in a trust account, completely severed from the lawyer's operating account. As we explained in Mansfield, ¶18, 350 P.3d at 115:

> With regard to the mishandling of funds and Rule 1.15, we have defined three levels of applicable culpability when evaluating the mishandling of funds: 1) commingling; 2) simple conversion; and 3) misappropriation. Commingling takes place when client monies are combined with the attorney's personal funds. [S]imple conversion occurs when an attorney applies a client's money to a purpose other than that for which it came to be entrusted to the lawyer. Misappropriation, or theft by conversion or otherwise, occurs when an attorney has purposely deprived a client of money through deceit and fraud. The degree of culpability ascends from the first to the last. Each must be proved by clear and convincing evidence. A finding that an attorney misappropriated funds, regardless of exceptional mitigating factors, mandates the imposition of harsh discipline—disbarment.

The PRT concluded Drummond's conduct amounted to misappropriation, and we agree. see State of Okla. ex rel. Okla. Bar Ass'n v. Mayes, 2003 OK 23, ¶22, 66 P.3d 398, 405. Her misappropriation of A.M.'s money violated ORPC Rules 1.15 and 8.4(c) & (d).

¶25 Testimony further established that after the $28,400.00 check bounced Drummond largely ignored her client's efforts to discuss the matter. Cortez said that aside from an initial conversation, Drummond did not return text messages or phone calls. Consequently, we find clear and convincing evidence Drummond's handling of the settlement money and failure to communicate with Ms. Cortez were violations of ORPC Rule 1.4.[17]

¶26 We also conclude the record contains clear and convincing evidence Drummond engaged in the unauthorized practice of law following her March 2016 interim suspension. Testimony from TPD Officer Brad Blackwell established that on May 5, 2016, Drummond appeared at the scene of a drug arrest. She presented an OBA card to Officer Blackwell and his partner and informed the pair that she represented one of the detained suspects. She also inquired about the officers' probable cause for an arrest. When cross examined about the incident, Drummond's answers were evasive and unbelievable.[18] We find the testimony of Offi-

---

**16.** ORPC Rule 1.15(a) reads:
a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

**17.** Rule 1.4 reads in relevant part:
(a) A lawyer shall:
* * *
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and

**18.** For example, the following exchange took place during her testimony:

Q. So, it's your testimony that when you walked up to an ongoing police event and handed the police officer your Bar card, you didn't realize that he would think you were there as an attorney?
A. I didn't. Because I did not say "I'm here to represent"—I'm here—I didn't—I did say I think I actually was asking Eric like, "[h]ow did this happen?" And Officer Elliot, not the gentleman who was here today—he was with Mr. Rowland across the way. In fact, I mean, like I said earlier mister—Officer Elliott asked me first if I was with mister—Officer Bagwell (sic). I'm not even sure of his name. And I said no. And then he said, "Are you his mom?" And I said no. I mean, English is my first language and I—and he said, you know, "You can read those in the reports". And I said "sure" or something that. Because I wasn't trying to interfere. I really was, you know, there—and I shouldn't have even approached, but it was really just to make sure that—quite honestly, that he wasn't beaten, kicked, spit on or otherwise. Because the reality of that happening was greater than 50 percent because it had hap-

cer Blackwell more trustworthy than Drummond's self-serving denial. Although she admitted displaying her OBA card, she testified that it was not her intent to hold herself out as an attorney. This explanation is entirely implausible. The evidence was clear and convincing that Drummond's actions violated ORPC Rule 5.5(b).[19]

¶ 27 Throughout the Rule 6 proceeding, Drummond failed to cooperate with the OBA investigation. The initial grievance was forwarded to Drummond's official roster address on April 22, 2016. On June 16, 2016, the OBA had the grievance served on Drummond by private process server. Yet, no response was delivered to the OBA until after the formal Complaint was filed.[20] To obtain Drummond's bank records the OBA was forced to issue subpoenas. We believe this is clear and convincing evidence Drummond failed to cooperate during the grievance process in violation of RGDP Rule 5.2.

### *Discipline*

¶ 28 Our next task is determining the level of discipline commensurate with the facts of Drummond's case. Although we utilize prior decisions as a gauge for imposing attorney discipline, the particular facts and circumstances of each case dictate its resolution. State of Okla. ex rel. Okla. Bar Ass'n v. Townsend, 2012 OK 44, ¶¶31-32, 277 P.3d 1269, 1279-80. The goal in bar disciplinary matters is not punishment, rather it is to "safeguard the interest of the public, of the courts, and of the legal profession." State of Okla. ex rel. Okla. Bar Ass'n v. Albert, 2007 OK 31, ¶11, 163 P.3d 527, 532-533. We must also weigh the deterrent effect upon the attorney. Conrady, ¶16, 275 P.3d at 139.

¶ 29 In the initial Rule 7 proceeding, the OBA and PRT suggested suspension for

a period of one year, retroactive to the March 7, 2016 order of interim suspension. Such a short suspension would be absurd under the circumstances even as they existed at that time. By bringing contraband into the the jail facility, Drummond committed a criminal act which was an abuse of her position as an attorney and directly impacted the integrity of the legal profession. see State of Okla. ex rel. Okla. Bar Ass'n v. Thompson, 2008 OK 89, ¶8, 194 P.3d 1281, 1284 (finding criminal conduct so objectionable it could do nothing but "undermine public confidence and trust in the dignity and integrity of the judiciary and the legal profession."). Drummond's criminal act warrants, at a minimum, a suspension for 2 years and a day, or the term of the deferred sentence, whichever is longer. see Cooley, ¶17, 304 P.3d at 457. However, we must consider evidence both in mitigation and any aggravating factors before imposing a final decision on discipline.

¶ 30 At the first PRT hearing, evidence offered in an attempt to palliate Drummond's ethical transgressions consisted of several personal friends who attested to her good character, intelligence, competence, and genuine remorse. Drummond herself expressed repentance for her illicit conduct and offered reassurances of no such future wrongdoing. Prior to the Rule 7 case, Drummond had no grievances with the OBA. The first PRT panel concluded mitigating evidence weighed heavily in favor of Drummond. However, we see the evidence in quite a different light.

¶ 31 As outlined above, following her interim suspension, Drummond continued to practice law in direct defiance of this Court's order. Not only did Drummond hold herself out as a lawyer to Officer Blackwell, she continued to represent clients in ongoing legal matters. In the Vance divorce case, she misrepresented her status to opposing coun-

---

pened just months before, and it was some of the same players or, you know, characters in that. Tr. Dec. 16, 2016, p. 154-155.

**19.** ORPC Rule 5.5(b) reads:
(b) A lawyer who is not admitted to practice in this jurisdiction shall not:
(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

**20.** Drummond filed an Answer to the Complaint on October 21, 2016, and an Amended Answer on December 19, 2016. The OBA waived any objection to filing the Amended Answer after the PRT hearing. Tr. Dec. 16, 2016, p. 163.

sel, the mediator, and her own client—deliberately concealing her suspension in an effort to avert further embarrassment.[21] Drummond's selfish and contemptuous exploits placed Mr. Vance in a very precarious position at the March 29, 2016 mediation. Drummond attempts to portray the underlying criminal act in this case as an "isolated event and one that was out of character."[22] Yet, Drummond's actions following this Court's order of interim suspension reflect otherwise. A review of docket entries in cases in which Drummond was an attorney of record also reveal her continued violation of the Court's suspension order. see *State v. Ronquillo*, Tulsa County Case No. CM-2015-5744, March 29, 2016 docket entry ("Judge David Youll: Defendant not present, and represented by Caroline Drummond."). Perhaps the most troubling evidence to this Court is Drummond's RGDP Rule 9.1 affidavit filed on March 28, 2016. Therein, Drummond swears she had notified all clients of her suspension and withdrawn from all cases in front of any tribunal. *This was a deliberate and knowing misrepresentation to this Court, as Drummond was still actively involved in Vance's divorce case*. In fact, Drummond had neither informed Mr. Vance of her suspension, nor withdrawn from his divorce case. Her motion to withdraw in the Vance proceeding was not filed until April 4, 2016. All of these facts weigh heavily against mitigation.[23] see State of Okla. ex rel. Okla. Bar Ass'n v. Downing, 1993 OK 44, 863 P.2d 1111.

¶ 32 At the second PRT hearing, Drummond presented almost no mitigating evidence. Although she did repay the money owed to Cortez in different installments, the manner of repayment was unscrupulous. Drummond did express remorse for her behavior, yet this Court is unconvinced.[24] Notwithstanding, we believe the outcome in this case is controlled by our decision in Mayes, 2003 OK 23, 66 P.3d 398.

¶ 33 In Mayes, the respondent attorney settled a wrongful death action on behalf of two minor children whose mother was killed in an accident. Id. ¶¶2-3, 66 P.3d at 401. Upon receiving settlement monies totaling $ 30,000.00, the respondent attorney deposited the checks in his trust account. Id. Over the next several months the respondent attorney depleted the trust account until it became overdrawn; consequently, the decedent's minor children were deprived of the remaining settlement funds. Id. ¶5, 66 P.3d at 402.

¶ 34 A disciplinary proceeding involving Mr. Mayes was already pending in the Oklahoma Supreme Court. In February 1999, we issued an order in the first disciplinary matter suspending Mr. Mayes for six months.[25] A second grievance relating to Mayes' mishandling of the settlement monies was filed and delivered to Mayes. As in the present case, Mr. Mayes repeatedly failed to provide a response to the OBA. As a result, the OBA was forced to issue subpoenas to obtain copies of Mayes' trust account records. In May 2002, the OBA brought a formal disciplinary

21. Although Drummond did admit to her suspension during the mediation, she was not forthcoming about the suspension in her March 24, 2016 letter to opposing counsel, Melissa DeLacerda. In fact the letter identifies Drummond as an attorney "Of Counsel" with the Drummond Law Firm, PLLC. The correspondence, which was also sent to the mediator and Mr. Vance, unequivocally contains legal-related communications designed to advocate for the client.

22. Respondent's Brief in Chief, p. 5.

23. The OBA did not assert any violations based on Drummond's actions in the Vance case. Although evidence regarding Drummond engaging in the unauthorized practice of law was presented without objection in the first PRT hearing, we will not consider these facts to support an independent violation of the ORPC or RGDP. However-

er, we consider Drummond's lack of candor with this Court an aggravating factor for purposes of determining the appropriate discipline.

24. In Drummond's Amended Answer and in her testimony at the PRT hearing, Drummond portrayed herself as the victim, claiming to have often "sabotage[d] herself while attempting to help or assist another." Amended Answer, at p. 4. Similarly, when asked why she knowingly violated the trial court order and Oklahoma law when sending the $ 6,000.00 wire transfer, Drummond explained, "[b]ecause I felt for Marie. And I have spent many months now analyzing why it is that I'm willing to self-sabotage because I feel badly or sad ..." Tr. Dec. 16, 2016, p. 138-139.

25. State of Okla. ex rel. Okla. Bar Ass'n v. Mayes, 1999 OK 9, 977 P.2d 1073.

case under RGDP Rule 6. After submission to this Court, we concluded Mr. Mayes actions rose to the level of misappropriation, as opposed to conversion.[26] We also determined Mayes failed to cooperate during the investigative process in violation of RGDP Rule 5.2. In the end, we concluded the evidence in Mayes' case warranted disbarment.[27]

¶ 35 The record before this Court is more than sufficient to establish violations of Oklahoma Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings. We conclude the appropriate discipline for Respondent Drummond is disbarment. The Oklahoma Bar Associations Application to Assess Costs in the Amount of $ 2,031.66 is sustained, to be paid within six (6) months of this pronouncement.

**RESPONDENT DISBARRED; COSTS IMPOSED**

¶ 36 ALL JUSTICES CONCUR

---

26. Id. ¶22, n. 26, 66 P.3d at 405, *citing* State of Okla. ex rel. Oklahoma Bar Ass'n v. Tully, 2000 OK 93, 20 P.3d 813 (explaining "[e]ven when there has been no grave economic harm to a client, misappropriation may be found when an attorney understands that the money he is utilizing belongs to a client.").

27. "Although we may sympathize with the respondent's health conditions and the economic situation in which it has placed him, any empathy is offset by the fact that he may well have inflicted the same misery on two minor children who had already lost their mother. Upon a de novo review of the record, we determine that the respondent mismanaged his trust account and failed to cooperate in the grievance process. The respondent's misconduct warrants disbarment and the payment of $ 653.57 in costs." Id. ¶32, 66 P.3d at 409.