STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Frank MISKOVSKY, III, Respondent.

SCBD No. 3571.

Supreme Court of Oklahoma.

Oct. 30, 1990.

Application for Rehearing Denied Feb. 11, 1991.

---

John E. Douglas, Asst. General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Robert P. Moore, Mark Hammons, Hammons, Taylor, Moore & Gee, Oklahoma City, for respondent.

SIMMS, Justice.

Respondent, Frank Miskovsky, III, was the subject of a formal complaint filed by the Oklahoma Bar Association, which alleged that he committed several acts violative of the Code of Professional Responsibility (Code), 5 O.S.1981, Ch. 1, App. 3, and the Rules Governing Disciplinary Proceedings (Rules), 5 O.S.1981, Ch. 1, App. 1–A.[1] Miskovsky responded to the allegations, and a hearing was held before the Professional Responsibility Tribunal which filed its report containing findings of fact and conclusions of law.

We have reviewed the entire record which included not only testimony and exhibits offered before the tribunal, but the transcript of a district court hearing concerning a divorce action in which Miskovsky was defense counsel. All allegations in the complaint stem from Miskovsky's conduct in the district court case. Having conducted a *de novo* examination of the entire record, *see* Rule 6.15 of the Rules, supra, and *State ex rel. Oklahoma Bar Association v. Cantrell*, Okl., 734 P.2d 1292, 1293 (1987), we find and conclude that respondent's misconduct warrants a suspension of three months and a public reprimand. Each count is addressed separately below.

### COUNT I

The complaint first alleges that respondent, counsel for Don Cornelius in a divorce action, was given a check for $7,663.00 which he and opposing counsel

---

1. The acts allegedly committed by respondent occurred prior to the effective date of the new Oklahoma Rules of Professional Conduct adopted March 10, 1988. See: 5 O.S.Supp.1988, Ch. 1, App. 3–A.

were to hold in trust. By order of the district court, the money was set aside for Cornelius to expend in preserving an oil and gas lease which was about to be canceled. According to the order, Mrs. Cornelius was to convey her interest in the oil and gas lease, a portion of the Cornelius' marital property, as well as the $7,663.00 to Cornelius in exchange for Cornelius relinquishing his rights to $80,000.00 worth of bonds to her. Both parties thought they were receiving a valuable asset, yet the funds were never expended to preserve the lease due to Mrs. Cornelius's refusal to deed her share of the lease to Mr. Cornelius. As a result, the lease was lost, and all that remained was the $7,663.00.

Complainant alleges that the funds were not a part of the lease interest which Cornelius received because the court order did not provide for Cornelius to retain the funds in the event he did not expend them. Respondent contends that the funds were Cornelius's to use in preserving the property interest, and since the interest was lost, he could spend the money however he wished. The testimony of the special district judge who issued the order in the divorce action contradicts respondent's interpretation of the order. Testimony of opposing counsel in the case neither contradicts nor confirms respondent's position as to the nature of the funds. Regardless, respondent and Cornelius considered the funds to be the property of Cornelius to spend as he wished.

Respondent testified that he discussed the funds with his client who agreed to have them applied towards his attorney fees bill which respondent claims was around $15,000.00. Cornelius denied that he gave Miskovsky permission to apply the money to his bill.

Rule 6.12 of the Rules Governing Disciplinary Proceedings, supra, requires the complainant to establish the charge or charges by clear and convincing evidence. *See: State ex rel. Oklahoma Bar Association v. Braswell*, Okl., 663 P.2d 1228, 1232 (1983); *State ex rel. Oklahoma Bar Association v. McMillian*, Okl., 770 P.2d 892, 899 (1982). Having failed to establish by clear and convincing evidence that Miskovsky misappropriated the funds, we dismiss this count.

## COUNT II

Cornelius testified that he entrusted several items, including eight one-hundred dollar bills, to respondent for safekeeping. Testimony from Cornelius and his son indicated that Cornelius requested the return of the items and his son received all the property except the $800.00 cash from respondent who allegedly promised to return it as soon as he got it from a safety deposit box. Several requests were made for the cash, yet it was never returned. Respondent testified that he kept the cash in a safe place at home and then applied it towards Cornelius's bill.

The record demonstrates that the cash and other items were not "paid" to respondent, but rather, were left in his possession for safekeeping. Thus, the strictures of DR 9–102(A) which require a lawyer to place funds *paid* to him in an identifiable account do not apply. However, DR 9–102(B) does apply, and respondent's violation of this provision warrants discipline.

Subsections (1) through (3) of DR 9–102(B) state that a lawyer shall notify a client of the receipt of his funds, securities or other properties, put the properties in a safety deposit box or "other place of safekeeping," maintain complete records, and render appropriate accounts to his client regarding the properties. The lawyer must further "[p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." DR 9–102(B)(4). Refusal to deliver property, including cash, of a client upon the client's request is a violation of DR 9–102 where that client is entitled to receive the property.

Respondent claims that Cornelius agreed to have the $800.00 applied towards his bill in another case which Cornelius asked respondent to initiate. However, application of the funds towards Cornelius's bill does

not overshadow the fact that Miskovsky refused to return the cash upon demand. These funds were not kept in a trust account like the $7,663.00, nor were they specifically related to a cause of action to which the funds could be attributed. The items of property, including the $800.00 cash, were in respondent's possession for safekeeping, returnable upon demand made by the rightful owner, Cornelius. Miskovsky violated DR 9-102 by refusing to return the cash upon demand.

■ For similar reasons, we find that respondent violated Rule 1.4(b) which states:

"Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services."

It appears that respondent converted the funds because they were entrusted to him for a specific purpose, safekeeping, and he admittedly applied them to another purpose, payment of his bill. The final sentence of Rule 1.4(b) which concerns the retention of money or property upon which the lawyer has a valid lien does not apply herein because respondent did not have a valid lien on the property of Cornelius.

Respondent argues that it was not conversion because he did not *wrongfully* take the funds which were due and owing to him, and because Cornelius credited the sum to money owed to respondent. Conversion, as the rule states, is *"deemed"* when a lawyer applies money to a purpose other than the purpose for which the funds were entrusted to the lawyer. Complainant proved that this occurred. Therefore, we find, as did the trial panel, that a conversion of the funds took place.

Although Cornelius demanded the return of the cash, he eventually acquiesced in respondents use of them by treating them as having been applied towards his bill. Regardless of this acquiescence, the misconduct deemed a conversion had already occurred.

■ Having found a violation of DR 9-102(B) and Rule 1.4(b), we must next assess a sanction. We note that the purpose of a disciplinary proceeding is not to punish the lawyer. *State ex rel. Oklahoma Bar Association v. Raskin,* Okl., 642 P.2d 262, 267 (1982). Rather, it is "to inquire into his continued fitness with a view to safeguarding the interest of the public, the courts and the legal profession." *Id.* In some cases, we have found that misappropriation of clients' funds, along with other misconduct, warranted disbarment. *See: Raskin,* supra; *State ex rel. Oklahoma Bar Association v. Smith,* Okl., 615 P.2d 1014 (1980); *State ex rel. Oklahoma Bar Association v. Perkins,* Okl., 757 P.2d 825 (1988). However, the case before us does not involve deceit and fraud as the cases cited above did. With this in mind, we believe the safeguarding function of disciplinary proceedings is fulfilled by suspending respondent from the practice of law for three months as the trial panel recommends.

### COUNT III

■ Throughout the proceedings, respondent supported his claims that it was proper for him to apply the money towards Cornelius's outstanding bill by asserting that an attorney's lien was filed in the divorce action. Evidence from the Oklahoma County District Court Clerk's office as well as respondent's admission showed that respondent hand-wrote "Atty lien claimed" and "F.M." on a pleading filed in the divorce action after the pleading had already been filed and microfilmed by the court clerk. Thus, the designation of an attorney lien was added onto the pleading in the possession of the court clerk after it was filed in his office. Although one member of the tribunal noted that respondent

could have easily drafted a separate attorney lien form and filed it in the case, respondent gave no explanation as to why he did not use this method.

Title 21 O.S.1981, §§ 461 and 462 provide for criminal punishment for any person who is guilty of altering any records of a court of justice. Respondent admits that he altered the document after it was filed. In defense of his actions, he asserts that he did not know that adding his attorney lien later was unlawful and that he had no criminal intent in adding the lien. Respondent has not been convicted of a criminal act, and although we find that respondent engaged in questionable conduct, such conduct did not involve "moral turpitude." *See:* DR 1–102(A)(3).

We do not agree with the trial panel that this action violated DR 1–102(A)(4) concerning conduct which involves "dishonesty, fraud, deceit, or misrepresentation." Complainant failed to establish such a violation by clear and convincing evidence. Rule 6.12, supra; *Braswell,* supra.

■ All involved agree that the client was not prejudiced by the late filing of the lien. However, we conclude, as did the trial panel, that the conduct was "prejudicial to the administration of justice," DR 1–102(A)(5), and warrants a public reprimand. Justice is not served when one attempts to acquire priority to money by filing a lien when this typically lawful maneuver is done in an illegal manner.

## COUNT IV

■ In responding to the complaint's allegations regarding Count III, Miskovsky stated:

"I began representing Don Cornelius in 1985. I filed an answer and cross-petition on his behalf, claiming a lien, on December 24, 1985."

Respondent admits that this statement seems to assert the lien was claimed when the pleading was filed, whereas, he testified that he added the lien claim after filing it. However, respondent asserts that he did not intend to mislead the Complainant with this statement. Miskovsky character-

izes the statement as "sloppiness in framing his response and in identifying the issues with which the Bar was concerned."

We find it improbable that an attorney of experience who receives a complaint which undoubtedly could affect whether he continues practicing law would be "sloppy" in responding to the complaint. However, although it appears that respondent did not "make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct," we find that the complainant did not prove by clear and convincing evidence that respondent *deliberately misrepresented* the timing of the lien to complainant. *See:* Rule 5.2 of the Rules. Rule 5.2 expressly makes "[d]eliberate misrepresentation in such response" grounds for discipline. Absent a finding that the misrepresentation was *deliberate,* a conclusion that disciplinable misconduct occurred is unwarranted. The evidence also fails to establish a violation of the DR 1–102(A)(4) ban on "conduct involving dishonesty, fraud, deceit, or misrepresentation." The evidence did not clearly and convincingly prove that respondent intended to mislead complainant. Rule 6.12; *Braswell,* supra.

Attorneys who receive complaints from the Bar Association are urged to study the allegations carefully and respond fully, accurately, and truthfully to avoid further allegations of ethical violations being lodged against them.

## COUNT V

■ During the course of the tribunal hearing, evidence came forward that a possible conflict of interest prohibited Miskovsky from exercising independent judgment in attempting to reacquire marital property, the $80,000.00 worth of bonds, which Cornelius had exchanged for the aforementioned oil and gas lease and $7,663.00. Since Miskovsky had already applied the funds toward Cornelius's bill, a successful redistribution of property would very probably include reallocation of the funds which Miskovsky considered to be his as payment for services rendered. Cornelius hired sub-

sequent counsel who convinced the trial court that redistribution of the assets was equitable in light of the complete loss of the oil and gas lease. The conflict in pursuing the redistribution is evident. Yet, complainant did not bring charges for this apparent conflict of interest, nor did complainant argue for discipline in its brief to this Court.

The tribunal, which first noted the conflict, declined to recommend punishment because complainant failed to recognize it, allege it, and put respondent on notice of it so that he could defend such an allegation in his hearing before the tribunal. We agree with this treatment of the apparent violation. Although it is disciplinable misconduct, see DR 7–101(A) and DR 5–101(A), it would be fundamentally unfair to require respondent to defend conduct of which he was first put on notice at the hearing. We decline to find a violation or assess discipline for this alleged misconduct.

WE HEREBY ORDER AND DECREE that Respondent be suspended from the practice of law for a period of three months. Additionally, respondent is publicly reprimanded for misconduct set out in Count III. Respondent is further ordered to pay costs of the proceedings within Thirty (30) Days of the date that this opinion becomes final.

HARGRAVE, C.J., and LAVENDER, SIMMS, DOOLIN, KAUGER and SUMMERS, JJ., concur.

HODGES, J., concurring in part, dissenting in part: I concur in that part of the opinion which gives Respondent a public reprimand. I dissent from the imposition of a three month suspension.

WILSON, J., concurs in part, dissents in part and joins HODGES, J.

OPALA, V.C.J., not participating.