2003 OK 32

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jack R. DURLAND, Jr., Respondent.**

**No. SCBD 4334.**

Supreme Court of Oklahoma.

March 18, 2003.

Dan Murdock, General Counsel, Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Darquita L. Maggard, Durland & Maggard, Oklahoma City, OK, for Respondent.

HARGRAVE, J.

¶1 Disciplinary proceedings were initiated against respondent, Jack R. Durland, Jr., by Complainant, the Oklahoma Bar Association, which in substance charged respondent with converting funds for his own use from a trust

under which he served as co-trustee, thus violating his fiduciary duty. The Oklahoma Bar Association further alleged that respondent made misrepresentations to William T. Durland and Mrs. Pederson stating that the money was being invested in Certificates of Deposit. When pressured about the Certificates of Deposit, respondent sent bogus certificates to Mr. Durland and Mrs. Pederson. Finally, the Bar alleges that respondent failed to provide a full and fair response to the merits of the grievance filed against him. The Professional Responsibility Tribunal (PRT) found respondent guilty of misconduct and recommends disbarment. We, likewise, find misconduct that warrants discipline. We disbar respondent.

## STANDARD OF DETERMINATION IN BAR DISCIPLINARY PROCEEDINGS

¶ 2 In *State ex rel. Oklahoma Bar Association v. Miskovsky,* 1991 OK 88 ¶ 4, 824 P.2d 1090, we set out the standard of review in attorney disciplinary proceedings. We held:

In disciplinary matters we are a licensing court acting in the exercise of our exclusive jurisdiction. *State ex rel. Oklahoma Bar Association v. McMillian,* 770 P.2d 892, 894 (Okla.1989). Our determinations are made *de novo* and neither the findings of fact of the PRT nor its view of the weight of the evidence or credibility of witnesses are binding on us. *Id.* Further, no presumption of correctness attaches to the findings or conclusions of the PRT. *Id; State ex rel. Oklahoma Bar Association v. Braswell,* 663 P.2d 1228, 1230 (Okla.1983). Although a PRT's recommendations are accorded great weight they are merely advisory. The ultimate decision-making authority rests with us. *McMillian, supra; State ex rel. Oklahoma Bar Association v. Samara,* 683 P.2d 979, 984 (Okla. 1984). Finally, to warrant a finding against a lawyer in a contested case the charges must be established by clear and convincing evidence. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S. 1981, Ch. 1, App. 1–A.

*Miskovsky,* 824 P.2d at 1093.

With these principles in mind we turn to a discussion of the misconduct charged.

### FACTS OF MISCONDUCT

¶ 3 Judith Pederson and Respondent were trustees of their uncle William T. Durland's trust. This trust contained more than $400,000.00 in real property stocks and cash. William T. Durland lived with Mrs. Pederson and she paid the personal bills for her uncle out of the trust. Respondent was responsible for the investments, taxes and other aspects of the trust. The cash assets of the trust were originally placed in a Merrill–Lynch account. Mrs. Pederson became aware that funds had been diverted from this account. Respondent assured Mrs. Pederson that the funds had been moved into certificates of deposit with Boatmen's bank, and that the cash was earning higher interest. Respondent sent several letters to Mrs. Pederson and William T. Durland asserting that the funds had in fact been moved. Respondent admitted to sending these letters.

¶ 4 Mrs. Pederson sought copies of the Certificates of Deposit and repeatedly asked for copies from Respondent. Respondent was not eager to send any documents, and when Mrs. Pederson finally received copies of these documents from the Respondent, she took the certificates to the bank and discovered that they were bogus. Respondent acknowledged that there were no certificates, but that the trust had "loaned" the money to Respondent's professional corporation. Respondent stated that he was close to his uncle and had discussed with him the necessity of the trust lending the funds to him. The uncle did not recall any such agreement. We find that Respondent's falsifying of the certificates of deposit to be proven by clear and convincing evidence. Having found this action proven, we decline to address any of the other issues presented, as this act clearly warrants discipline.

### DISCIPLINE

¶ 5 In *Miskovsky,* 1991 OK 88 ¶ 40, 824 P.2d at 1101, we held the following concerning discipline in attorney misconduct cases:

The purpose of a disciplinary proceeding is not to punish the lawyer, but to inquire into his continued fitness to practice with a view to safeguarding the interest of the public, the courts and the legal profession. *State ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d 262, 267 (Okla.1982).

¶6 This conduct is a violation of the Oklahoma Rules of Professional Conduct, 5 O.S. Supp.1988, Ch. 1, App. 3–A, Rules 8.4(b) and (c), which provide respectively, it is misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation...."

¶7 Fraud and misrepresentation by an attorney toward his client are serious forms of misconduct. Although he was not in a lawyer-client relationship with his relatives, he was in a relationship of trust which he betrayed over an extended period of time. If the situation had involved a lawyer-client relationship, the discipline here would surely be disbarment.

¶8 In *Oklahoma Bar Association v. Thomas,* 1995 OK 145, ¶7,8, 911 P.2d 907, This Court was faced with a similar situation. As part of Thomas' misrepresentation(s) to his client, Thomas falsified court documents by photocopying the file stamp of the Clerk of the Oklahoma Supreme Court in an unrelated case, altering pertinent parts of an order in an unrelated case to make it appear applicable to the appeal in his client's case. Thomas admitted to all of the misconduct, including falsification of the order. We disbarred Thomas finding:

> Fraud and misrepresentation by an attorney toward his client are serious forms of misconduct. *State ex rel. Oklahoma Bar Association v. Brown,* 863 P.2d 1108, 1111 (Okla.1993). Likewise, the forging of legal documents is a serious breach of legal ethics which constitutes illegal conduct involving moral turpitude and justifies imposition of the most severe discipline. *State ex rel. Oklahoma Bar Association v. Colston,* supra, 777 P.2d at 924. Such misconduct, coupled with neglect of client matter(s) and a record of previous discipline has resulted in disbarment. *State ex rel. Oklahoma Bar Association v. Brown,* supra.

¶9 Additionally, in *Oklahoma Bar Association v. Moore,* 1987 OK 21, 741 P.2d 445, this Court was again faced with an attorney who falsified documents. This Court disbarred the attorney as a result of this misconduct. Moore's misconduct resulted from his representation of clients in probate actions. In the first action, Moore filed the petition for settlement of final account, determination of heirship and distribution which related that all taxes had been paid. The probate judge, at the trial of this matter, testified that Moore had stated in conjunction with the petition, that, although the taxes had not yet been paid, the funds had been reserved and arrangements made for payment. The decree of settlement in the estate was entered.

¶10 Subsequently, the IRS contacted the heir and informed her that $50,268 in estate taxes were due plus $18,506.19 in interest and penalties, and there was also a $239.60 bad check charge for a check submitted by Moore. Investigation revealed that the Oklahoma estate taxes had not been paid and $56,002.82 was owing for taxes plus $13,140.73 in interest. The evidence at trial also revealed that Moore, personally or through his office, had provided a fraudulent tax release to the heir showing the Oklahoma taxes to have been paid. The heir eventually had to mortgage the property passed to her in the estate to pay the taxes. Moore eventually paid his client what was owed her.

¶11 In another matter, Moore admitted "borrowing" some $484,876.00 from another estate, a good portion of which was clearly shown to have gone for Moore's personal purposes. Moore's defense on this count was that his two coexecutors in the estate had acquiesced to his actions and that they had told him that the beneficiary who was to receive the cash assets of the estate also consented to his use of the funds.

¶12 This Court found that coexecutors acquiesced neither to the misuse of funds nor to Moore's signature of their names to checks drawn on the estate account. We found that the evidence supported the trial tribunal's conclusion that the names of Moore's coexecutors on checks drawn on the

estate account were, in several instances, forgeries.

■ ¶ 13 In the present matter, Durland's actions were no less severe than those committed in *Moore* and *Thomas*. Durland's acts involved misrepresentation, deceit and fraud. These acts are reprehensible and are the type from which the public needs protection. In *State v. Raskin*, 1982 OK 39 ¶ 16 642 P.2d 262 this Court opined:

> Our task in cases such as this is to protect the public and to preserve the public confidence in the legal profession and in the judiciary that licenses them. The relationship between a lawyer and a client calls for the highest degree of integrity and fidelity. Nothing less can be tolerated. Lawyers stand licensed by the Supreme Court for the practice of their profession. The maintenance of strict integrity among the members of our bar is one of this court's constitutional responsibilities. Every licensed lawyer is presented to the public as a person worthy of confidence in the performance of all professional activities. If he should become unfit, it is our duty promptly to withdraw the endorsement for the immediate protection of the public.

■ ¶ 14 Respondent also failed to provide full and complete information directed toward the merits of the investigation thus violating Rules 8.1(b) and 8.4(d) and Rule 5.2 of the RGDP. Respondent repeatedly failed to provide the required response. Even though Complainant's motion to compel production of documents was granted and ordered by the Tribunal, Respondent continued to fail to comply and produce the requested documents or information including the day of trial.

¶ 15 We have also recognized that mitigating evidence or circumstances may be considered in arriving at what is the appropriate discipline. *State ex rel. Oklahoma Bar Association v. Raskin*, 1982 OK 39 ¶ 17, 642 P.2d 262, 267. We turn to the mitigating evidence in the record before us. Respondent has practiced law in the State of Oklahoma for thirty-six years without any type of complaint being filed against him prior to the commencement of this action. Additionally, the entire amount of the funds taken by Respondent was repaid after a lawsuit was instigated for the return of the $220,000.

¶ 16 Although mitigating evidence may persuade us in cases involving lesser forms of misconduct, we believe the actions involved here, the forged certificates of deposit, go to the heart of respondent's fitness to practice law. No less severe punishment is warranted on this record.

¶ 17 Accordingly, we order that respondent be disbarred and his name stricken from the roll of attorneys. Further, the costs associated with this disciplinary proceeding in the amount of $3,829.61 shall be borne by respondent. They are to be paid within 90 days from the date this opinion becomes final.

**RESPONDENT IS DISBARRED AND HIS NAME IS ORDERED STRICKEN FROM THE ROLL OF ATTORNEYS. RESPONDENT ORDERED TO PAY COSTS OF $3,829.61.**

¶ 18 CONCUR: WATT, C.J., HODGES, LAVENDER, KAUGER, BOUDREAU and WINCHESTER, JJ.

¶ 19 DISQUALIFIED: OPALA, V.C.J., and SUMMERS, J.