OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WATKINS

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WATKINS
2019 OK 76
Case Number: SCBD-6621
Decided: 11/19/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 76, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
BRANDON DUANE WATKINS, Respondent.
ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE
Â¶0 The Oklahoma Bar Association filed a complaint against Brandon Duane Watkins, Respondent, alleging three counts of misconduct. The Professional Responsibility Tribunal found clear and convincing evidence of conversion and misappropriation of funds, neglect, failure to communicate, and enhancement. Upon de novo review, we find Respondent guilty of simple conversion, neglect, and failure to communicate.
RESPONDENT IS SUSPENDED FOR TWO YEARS AND ONE DAY; MOTION TO ASSESS COSTS GRANTED.
Tracy Pierce Nester, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant. 
Brandon Duane Watkins, Perkins, Oklahoma, Pro Se.
OPINION
DARBY, V.C.J.: 
Â¶1 The Oklahoma Bar Association (Bar) initiated this disciplinary proceeding on January 8, 2018, by filing a complaint against Respondent pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, ch.1, app. 1-A. The complaint alleged violations of RGDP 1.3 (discredit upon the legal profession) and Oklahoma Rules of Professional Conduct (ORPC) 1.1 (competence), 1.3 (diligence), 1.4 (adequate communication), 1.15 (safeguard client property), 3.2 (expedite litigation), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 5 O.S.2011, ch. 1, app. 3-A. The Professional Responsibility Tribunal (Trial Panel) found clear and convincing evidence establishing the facts in the complaint and that Respondent violated RGDP 1.3 and ORPC 1.1, 1.3, 1.4, 1.14 [sic], and 3.2.
[1] The Trial Panel recommended suspension of two years and one day, and the Bar asked this Court to impose appropriate discipline and assess costs.
Â¶2 The questions before this Court are (1) whether Respondent violated the ORPC and RGDP, and (2) if so, what discipline should be imposed. We find that Respondent violated numerous rules governing attorney conduct. Due to the nature of Respondent's actions, the length of time they were ongoing, and his past disciplinary history, we determine the proper discipline is suspension for two years and one day.
I. STANDARD OF REVIEW
Â¶3 The Supreme Court of Oklahoma possesses original, exclusive, and nondelegable jurisdiction to control and regulate the practice of law, licensing, ethics, and discipline of attorneys. State ex rel. Okla. Bar Ass'n v. Braswell, 1998 OK 49, Â¶ 6, 975 P.2d 401, 404; see also 5 O.S.2011, Â§ 13; RGDP 1.1. The Bar has the burden to present clear and convincing evidence demonstrating the lawyer's misconduct. State ex rel. Okla. Bar Ass'n v. Godlove, 2013 OK 38, Â¶ 3, 318 P.3d 1086, 1088; see also RGDP 6.12. Clear and convincing evidence is evidence sufficient, both in quality and quantity, to produce a firm conviction of the truth of the allegations. Godlove, 2013 OK 38, Â¶ 3, 318 P.3d at 1088; see also RGDP 6.12.
Â¶4 The Court reviews the Trial Panel proceeding de novo in order to determine whether discipline is warranted and what sanction, if any, is to be imposed. State ex rel. Okla. Bar Ass'n v. Bednar, 2019 OK 12, Â¶ 2, 441 P.3d 91, 95. To make this assessment and imposition, we must receive a record that permits "(a) an independent on-the-record determination of the critical facts and (b) the crafting of an appropriate discipline." State ex rel. Okla. Bar Ass'n v. Schraeder, 2002 OK 51, Â¶ 6, 51 P.3d 570, 574. The Bar asserts that the record in this case -- consisting of pleadings, transcript, exhibits, application to assess costs, and the Trial Panel Report -- is complete and sufficient for our review and the imposition of discipline. We agree.
II. PRIOR DISCIPLINE
Â¶5 In November 2013, Respondent agreed to represent a husband and wife regarding a promissory note; in July 2014, he filed a breach of contract action on their behalf. Bar Ex. 11. Eventually, the court dismissed the case and awarded the opposing party attorney fees and sanctions against Respondent totaling $9,099.41. Id. As a result, on July 20, 2015, the client filed grievance DC-15-138 against Respondent. Bar Ex. 10.
Â¶6 On November 30, 2015, Respondent signed a Diversion Program Agreement to complete classes and pay all associated costs; in return, he received a private reprimand and the Professional Responsibility Commission did not seek further discipline. Bar Ex. 10, at OBA 60-67; see also RGDP 5.1(c)-(f). Respondent completed Law Practice Management, Trust Accounting Essentials, and Communication and Client Neglect classes between March 22 and April 12, 2016. Complaint at 5, para. 23. On July 15, 2016, Respondent received a private reprimand. Bar Ex. 11, at OBA 68; Complaint at 5, para. 23.
III. FACTS AND PROCEDURAL HISTORY
Â¶7 In December 2013, Chris Chaney hired Respondent after Chaney's wife was killed in an automobile accident. In January 2014, Respondent filed a petition for letters of administration, appointment of personal representative, and determination of heirs in In re Estate of Jeannie Kay Chaney, No. PB-2014-2 (Craig Co. Dist. Ct.). Bar Ex. 5, at OBA 518. In February, the district court determined heirs and named Chaney as personal representative of the estate. On June 3, 2014, Respondent deposited into his client trust account a $100,000 settlement check received for the death of Jeannie Chaney.
Â¶8 On July 1, Respondent filed notice to creditors, an inventory and appraisal of the estate, consent to partial distribution by the other heirs (dated June 12 and 18, 2014), and a petition for partial distribution. The petition stated that pursuant to title 84, section 213(B)(2)(c) of the Oklahoma Statutes, the estate would be distributed one-half (1/2) to Chaney, one-sixth (1/6) to Shaya Emerson, Mrs. Chaney's adult child, and one-sixth (1/6) each to Mrs. Chaney's two minor children. The petition requested distribution of $70,000 to the personal representative "in order to pay attorney fees and other costs of administration, and for distribution to the above described heirs at law." Bar Ex. 5, at OBA 545. On July 1, 2014, the district court ordered immediate distribution of $70,000. Bar Ex. 5, at OBA 548.
Â¶9 Almost five months later, on November 24, 2014, Respondent paid Chaney $32,570.55. Chaney's settlement statement listed deficits for five "liens filed with court per probate" in the total amount of $1,858.90
[2] and an attorney fee of $33,000. The statement averred a "total amount due to all heirs and Mr. Chaney" of $65,141.11. Chaney signed the settlement statement and accepted the funds due to him personally. At that point, Respondent had presumably paid out $64,570.55 of the $70,000.00 ordered by the court.[3] Respondent, however, still owed the remaining heirs $32,570.55.
Â¶10 On April 30, 2015, Emerson (the decedent's lone adult child) signed a settlement statement from Respondent which referred to her as "client" a total of seven times. Respondent paid Emerson $10,856.84
[4] -- bringing the total amount Respondent had presumably disbursed to $78,286.29[5] of the $70,000.00 ordered for immediate payment almost ten months earlier. But Respondent still owed the remaining heirs $21,713.71.
Â¶11 On June 25, 2015, Chaney terminated Respondent's services via letter. Bar Ex. 4, at OBA 39. Chaney requested that Respondent send him the case file and pay the remaining heirs, or anyone else owed, within ten days. Respondent did not do either.
Â¶12 On November 21, 2016, almost a year and a half after terminating representation, Chaney filed a grievance that stated in part:
[Respondent] still owes my family part of the settlement. . . . It was our understanding that these funds would be placed into a trust account until the children reach the age of 18. Respondent has been paid to set up these accounts and has still yet to do so. On June 26th, 2015 [sic], I sent [Respondent] a letter of termination, demanding that these funds be paid to the minors within ten (10) days. This has yet to be done.
Bar Ex. 1, at OBA 4. At this point, Respondent had held the funds for the minor children of the deceased for over two-and-a-half years.
Â¶13 Three months later, on February 21, 2017, Respondent withdrew all of the money in his client trust account and filed a motion to interplead $23,573.86 for the remaining heirs,
[6] and a motion to withdraw as counsel. The court allowed Respondent's withdrawal as counsel and ordered the court clerk to hold the money pending distribution orders. That same day, Respondent filed his response to the complaint denying the allegations.
Â¶14 From July 2014 through February 2017, Respondent made nine cash withdrawals,
[7] seventy-nine transfers to his personal checking account,[8] and two withdrawals for loan payments, all out of his client trust account. Respondent made the first loan payment on December 5, 2016 for $963.41. Bar Ex. 17, at OBA 431-34. He made the second loan payment on January 13, 2017 for $660.94. Id. at OBA 467-70. The payments were credited to two different loan account numbers, but both loan payment slips name Respondent as the account owner. Id. at OBA 433, 469.
Â¶15 The Bar investigated Respondent and on January 8, 2018, filed a formal complaint setting forth three counts of professional misconduct. The complaint alleged first that Respondent converted or misappropriated client funds when he failed to timely pay heirs, his client trust account balance was regularly below the amount he owed, and he never established separate bank accounts in trust for the minor heirs as required by title 12, section 83 of the Oklahoma statutes. Complaint at 2-3, paras. 7-13. Second, the complaint alleged that Respondent committed neglect and failed to communicate with clients: repeatedly neglected to return client calls, failed to notify clients when he relocated offices on three occasions while the case was ongoing, delayed five to ten months before paying the first two heirs, and never created trust accounts for the minor heirs. Complaint at 4, paras. 16-19. Third, the complaint alleged that discipline should be enhanced due to Respondent's diversion program agreement in the previous matter. The Bar submitted evidence that Respondent was properly served with notice. On January 29, 2018, Respondent filed an answer to the complaint.
Â¶16 On May 10, 2018, at the hearing before the Trial Panel, Chaney testified that from July through November of 2014, he called Respondent's office and cell phone every week and was regularly unable to reach him. Chaney stated that he left numerous messages for Respondent with no response and did not recall Respondent accounting for the delay. Chaney clarified that after he received payment, he mostly left communication to Emerson. Chaney also noted that Respondent relocated his office during this window of time without notifying him or Emerson in any manner.
Â¶17 Emerson testified that Respondent failed to return calls on at least four occasions and he cancelled previously scheduled meetings at the last moment four times. Emerson testified that on April 30, 2015, she had taken off work early to meet with Respondent when he called attempting to cancel their appointment at the last moment, but she refused to take no for an answer. Emerson stated that when Respondent finally arrived he appeared disheveled, possibly intoxicated, and fidgeted throughout the meeting, making her feel extremely rushed.
Â¶18 The father of the minor children testified that no one from Respondent's office had contacted him about distributing the funds to his children. The father recalled being told at some point that he needed to get bank accounts for his children, so he called a bank, obtained two account numbers for that purpose, and conveyed the information to Emerson. But, the father did not know if Emerson conveyed that information to Respondent.
Â¶19 The Bar's investigator, Krystal Willis, testified that Respondent's trust account balance regularly fell below the amount owed to the heirs. Willis stated that Respondent had only two other accounts, one personal and one operating, at the bank where his trust account was located, but acknowledged that he may have had another trust account elsewhere. She also testified about Respondent's prior discipline and his failure to provide requested documentation, such as evidence of the liens, payments to creditors, and his substance abuse problem and recovery.
Â¶20 Respondent acknowledged that, "[w]ith regards to this case, yeah, I may have taken too long." Hr'g Tr. 123:19-20, May 10, 2018. Respondent justified his failure to pay or timely respond to Emerson and the other heirs by testifying that he only represented Chaney. Respondent claimed that he had responded to Emerson's calls, but they were unable to coordinate schedules. Respondent also testified that he did not realize that assisting his client in getting trust accounts open for the benefit of the minors was his responsibility. Instead, he claimed that he couldn't open accounts for the guardian of the children, and the father never provided him information to put into the paperwork regarding accounts for the children.
Â¶21 Respondent testified that he had a rough patch in his life approximately three years before, but that he had not consumed alcohol since April 16, 2016. He admitted that he "very well could have been" intoxicated when he gave Emerson her check. Id. at 146:21-25. Respondent had no memory of how he was dealing with client funds at the time due to the level of his drinking. Id. at 133:12-17.
Â¶22 Respondent testified that he did not dispute the accuracy of the trust account records. He stated:
I don't know what happened to the money from the trust account. I - - to this day, I don't. I lost my home, I lost my car, I pawned everything that I had of any value, so it sure didn't go to me. I don't know what happened to it, but I know that when I found out it wasn't there, I had to fix it, and I did.
Id. at 124:7-13. Respondent acknowledged without excuse that he should have interplead the money to the court as soon as he realized there was a problem. He further explained, "all I know is it - - it didn't pay my mortgage, it didn't make my car payment. I don't know what happened to it." Id. at 133:20-22. When asked if he had tried to look at the checks in and out of his operating account to reconstruct what occurred, Respondent answered "[f]rom the records, I can't tell, Your Honor. I - - I cannot tell. I would have loved to come in here today with something to show you, but I can't figure it out." Id. at 134:1-4.
Â¶23 Respondent explained that he had been trying to use what he learned in his diversion program classes and do everything possible to fix things. In regard to the Bar's multiple requests for the case file and a full accounting of work performed, Respondent explained that he did not provide it because he thought he had previously done so when he was represented by counsel. He had no explanation for his failure to provide lien documentation upon request a month before the hearing.
Â¶24 The Bar requested a one to two year suspension. On June 22, 2018 the Trial Panel filed their report with this Court. The Trial Panel found clear and convincing evidence of misappropriation of funds and neglect, and it concluded that Respondent should be suspended for two years and a day.
IV. ANALYSIS
Count 1: Misappropriation or Conversion
Â¶25 The Bar alleged that Respondent violated RGDP 1.3
[9] and ORPC 1.1,[10] 1.3,[11] 1.15,[12] 3.2,[13] and 8.4(c)[14] by mismanaging funds entrusted to him. There are three levels of culpability when an attorney mishandles client funds: commingling, simple conversion, and misappropriation. State ex rel. Okla. Bar Ass'n v. Mayes, 2003 OK 23, Â¶ 18, 66 P.3d 398, 404. We treat mishandling of third party funds the same. State ex rel. Okla. Bar Ass'n v. Taylor, 2000 OK 35, Â¶ 17, 4 P.3d 1242, 1250.
Â¶26 Commingling is the least serious level of culpability and occurs when an attorney fails to keep client and attorney money in separate accounts. Mayes, 2003 OK 23, Â¶ 18, 66 P.3d at 404. Respondent has admitted that he is guilty of commingling and "sloppy bookkeeping." He regularly commingled his trust account -- making earned fee deposits into it, transferring money directly to his personal account, and making cash withdrawals.[15]
Â¶27 When an attorney uses client funds for a purpose other than that for which they are intended, he or she reaches the second level of culpability: simple conversion. Taylor, 2000 OK 35, Â¶ 17, 4 P.3d at 1250. Respondent argues that he is not guilty of simple conversion. Rather, at most, he argues the money was simply missing and there is no evidence to establish what it was used for or that he used it. A thorough review of the client trust account records, however, shows that Respondent used client money to make loan payments on two occasions -- clear examples of simple conversion at a minimum.[16]
Â¶28 Finally, the most serious level of culpability is misappropriation. Id. Â¶ 17, 4 P.3d at 1250. Misappropriation occurs when a lawyer purposefully deprives a client of money through deceit and fraud. Id. Respondent argues that he is not guilty of misappropriation because there was neither evidence of intent nor did the clients suffer grave economic harm. Misappropriation may be found without grave economic harm occurring when an attorney understands that he is utilizing money that belongs to a client. Mayes, 2003 OK 23, Â¶ 22 n.26, 66 P.3d at 405-06 n.26. The focus of the test is intent and whether the deprivation occurred through deceit or fraud. State ex rel. Okla. Bar Ass'n v. Farrant, 1994 OK 13, Â¶ 8, 867 P.2d 1279, 1284. A repeated pattern of behavior over time can show intent to misuse funds. State ex rel. Okla. Bar Ass'n v. Wilson, 2008 OK 42, Â¶ 25, 187 P.3d 708, 716. Respondent's pattern of withholding funds while making personal use of those funds by means of cash withdrawals and loan payments, especially after completing trust class and after the grievance was filed, is evidence of intent. There is, however, no evidence of Respondent's deceit or fraud.
Â¶29 Respondent's misconduct in this case was deplorable. He failed to ensure that the money for the minor children was placed into separate trust accounts for their benefit. Instead, he egregiously commingled the children's funds with his business and personal account. Respondent also committed simple conversion when he made two loan payments out of his client trust account -- a clear use of money for purposes other than that for which they were entrusted to him. Based on clear and convincing evidence, we hold that Respondent acted without competence or diligence, failed to safeguard client property or expedite litigation, and brought discredit upon the legal profession in violation of RGDP 1.3 and ORPC 1.1, 1.3, 1.15, and 3.2. We do not find clear and convincing evidence of misconduct involving dishonesty, fraud, deceit, or misrepresentation under ORPC 8.4(c).
Count 2: Miscommunication and Neglect
Â¶30 The Bar further alleged that Respondent violated RGDP 1.3 and ORPC 1.1, 1.3, 1.4,
[17] and 3.2, by failing to return funds owed for over two-and-a-half years -- one-and-a-half years of which followed his termination from the case. Further, Respondent neglected the case for an extended period, both before and after his services were terminated.
Â¶31 At the hearing, Respondent did not appear to appreciate the gravity of his misconduct. Respondent gave no explanation for his five and ten-month delays in paying Chaney and Emerson respectively. Respondent did not provide a copy of the representation agreement the Bar requested. Instead, he excused his neglect and lack of communication with the heirs as not required under ORPC 1.4 because they were not his "clients."
Â¶32 Even if there was a clear understanding that the heirs were not Respondent's clients,
[18] he still owed them a duty to promptly notify them once he obtained their property, and to promptly deliver it and provide a full accounting on request. ORPC 1.15(d). Respondent also owed Chaney a duty to communicate regarding the status of the matter and "promptly comply with [Chaney's] reasonable requests for information." ORPC 1.4(a)(3),(4). Respondent clearly violated these duties. Further, Respondent prepared a settlement statement for Emerson in which he referenced the case number and referred to her as "client" seven times in the statement block above her signature -- appearing to acknowledge an existing attorney-client relationship.
Â¶33 Regardless, a third-party non-client beneficiary can be regarded as a client for disciplinary purposes in certain circumstances. State ex rel. Okla. Bar Ass'n v. Minter, 2001 OK 69, Â¶ 34, 37 P.3d 763, 777. In Minter, the attorney represented clients in connection with selling land to a third-party and providing marketable title. Id. Â¶ 29, 37 P.3d at 776. The attorney neglected communication from the third-party and delayed extensively before filing deeds that did not clear the title. Id. Â¶Â¶ 30-31, 37 P.3d at 776-77. Eventually, the attorney filed a quiet-title action on behalf of the third-party without consulting him. Id. Â¶ 32, 37 P.3d at 777. We regarded the third-party non-client beneficiary of the attorney-client contract as a client for disciplinary purposes regarding the attorney's neglect. Id. Â¶ 34, 37 P.3d at 777.
Â¶34 Here, Respondent handled the settlement for Jeannie Chaney's wrongful death and her resulting estate. Respondent's attorney fee was paid from the entire settlement, including the heirs' portions. It is clear that the heirs were beneficiaries of Respondent and Chaney's representation agreement. Where Chaney had no interest in the funds due to the other heirs, Respondent's professional obligations became obligations to Emerson and the minor children. See id. Â¶ 34, 37 P.3d at 777. Therefore, Respondent also violated his duty to communicate with the heirs under ORPC 1.4.
Â¶35 An attorney shall withdraw from representation when the lawyer is discharged; upon termination the lawyer "shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred." ORPC 1.16, 5 O.S.2011, ch. 1, app. 3-A. On termination, Chaney requested distribution of the funds and return of the case file within ten days, but Respondent failed to promptly interplead or distribute the funds to the minor children. Rather, he held the money for an additional one-and-a-half years before withdrawing and interpleading the funds on the same day he responded to this grievance. Respondent failed to explain why he did not "consult with[] a lawyer of established competence in the field in question," as advised by the comments to ORPC 1.1, when he was confused on how to distribute the money. At no point has Respondent returned the case file to Chaney, or provided it to the Bar.
Â¶36 We find clear and convincing evidence in Count II that Respondent acted without competence or diligence, failed to adequately communicate with clients or expedite litigation, and brought discredit upon the legal profession in violation of RGDP 1.3 and ORPC 1.1, 1.3, 1.4, and 3.2.
V. DISCIPLINE
Â¶37 The main purpose of our disciplinary authority is to safeguard the interests of the public, the courts, and the legal profession. State ex rel. Okla. Bar Ass'n v. Friesen, 2016 OK 109, Â¶ 8, 384 P.3d 1129, 1133. Deterrence from similar future conduct is a secondary purpose of discipline. Godlove, 2013 OK 38, Â¶ 22, 318 P.3d at 1094. Discipline also serves to notify others that certain behavior is not tolerated. State ex rel. Okla. Bar Ass'n v. Combs, 2007 OK 65, Â¶ 36, 175 P.3d 340, 351.
A. Mitigation & Enhancement
Â¶38 We may consider mitigating circumstances to assess the appropriate measure of discipline. State ex rel. Okla. Bar Ass'n v. Durland, 2003 OK 32, Â¶ 15, 66 P.3d 429, 432. Respondent had fifteen years of prior unblemished service as an attorney. At the time he committed misconduct, his wife was in grave health which resulted in additional parenting responsibilities being thrust upon him for a special needs child. He was also struggling with alcoholism. Respondent has not consumed any alcohol since April 16, 2016. Respondent states that he made several attempts to overcome his drinking problem -- including relocating his practice, attending Alcoholics Anonymous, reaching out to Lawyers Helping Lawyers, and more -- but did not present any supporting evidence. We find that there are no mitigating factors regarding Respondent's alcohol consumption, although we do note the maelstrom enveloping his life at that time.
Count III: Enhancement Due to Prior Discipline
Â¶39 Consideration of prior discipline serves to aid the Court in making its decision and may enhance discipline. RGDP 1.7, 6.2; State ex rel. Okla. Bar Ass'n v. Mothershed, 2003 OK 34, Â¶ 41, 66 P.3d 420, 428. The Bar relies on Respondent's prior misconduct and his violation of the Diversion Program Agreement for enhancement. Respondent argues that enhancement is inappropriate due to overlap in timing of these cases. The record shows that Chaney terminated Respondent approximately nine months before Respondent completed the diversion program classes in spring 2016. Respondent, however, continued to contumaciously commingle funds and neglect the case long after the classes were completed.
Â¶40 "A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." ORPC 8.4 cmt. 2; Bednar, 2019 OK 12, Â¶ 68, 441 P.3d at 111. Respondent did not interplead the funds or withdraw as counsel until ten months after he completed the diversion classes. Of Respondent's seventy-nine transfers to personal checking out of his client trust account, twenty-two were after he completed his classes. Bar Ex. 17, at OBA 357, 379, 391, 413-16, 423, 435-40, 445-48, 449-52, 453, 479. Respondent made both loan payments after he completed the classes and after Chaney filed his grievance. Id. at OBA 431-34 (Dec. 5, 2016); id. at OBA 467-70 (Jan. 13, 2017).
Â¶41 When Respondent failed to return the funds and continued to abuse his client trust account, he showed an indifference to his legal obligation and a lack of deterrence following his prior discipline. His completion of law practice classes -- performance management, trust accounting essentials, and client communication and neglect -- do not appear to have had any positive effect on his communicating with clients, returning funds, or using his trust account properly. Therefore, we find Respondent's prior discipline to be appropriate for enhancement.
B. Appropriate Discipline
Â¶42 Discipline for misconduct is not punitive. Mayes, 2003 OK 23, Â¶ 25, 66 P.3d at 406. Rather, appropriate discipline is that which (1) is "consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (2) avoids the vice of visiting disparate treatment of an offending lawyer." Schraeder, 2002 OK 51, Â¶ 6, 51 P.3d at 574. While each situation involves unique transgressions and mitigation, we find that suspension for two years and one day is the appropriate discipline in accordance with precedent involving extensive neglect and mishandling of client funds.
Â¶43 In Whitebook, we suspended an attorney for two years and one day for failure to act with competence or diligence in representing clients, failure to communicate with clients, and failure to respond to the Bar. State ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72, Â¶ 26, 242 P.3d 517, 523. The Court considered two grievances against Whitebook regarding clients with probate cases. Id. Â¶Â¶ 4, 6, 242 P.3d at 519. Whitebook ceased work on the first case after four months and failed to take any action for eighteen months in the second. Id. The first client attempted to contact Whitebook multiple times and occasionally received vague promises from him to complete the probate. Id. Â¶ 4, 242 P.3d at 519. Whitebook failed to return the unearned fee and failed to communicate with the second client. Id. Â¶ 6, 242 P.3d at 519. More egregiously than Whitebook, Respondent not only neglected client matters for almost a year before he was terminated, he also took no action to return the client's funds or case files for more than a year and a half after that -- Respondent also commingled funds numerous times and committed simple conversion.
Â¶44 In Tully, we suspended an attorney for two years and one day for depriving his client of $596.40 by way of deceit and fraud. State ex rel. Okla. Bar Ass'n v. Tully, 2000 OK 93, Â¶Â¶ 19, 24, 20 P.2d 813, 817-18. We viewed as mitigation that Tully had no prior history of discipline and clearly suffered from a substance abuse and alcohol problem which he took many steps to address. Id. Â¶ 22, 20 P.2d at 818. Unlike Tully, Respondent provided no physical evidence of steps taken to recover, but stopped drinking at approximately the same time as his prior diversionary-program classes. Respondent's recent diversionary classes appear ineffective as they were completed before significant misconduct occurred in this case. Unlike Tully, who committed one act of misconduct with client funds, Respondent repeatedly commingled funds over the course of many months, making seventy-nine transfers out of his client trust account into personal checking, nine cash withdrawals, and two loan payments.
Â¶45 In Friesen, we disbarred an attorney who commingled funds, failed to represent his client with competence and diligence, failed to keep clients informed about the representation, failed to promptly comply with requests for information, and charged an unreasonable fee. 2016 OK 109, Â¶Â¶ 1, 26, 384 P.3d at 1130, 1138. Friesen represented parents in a wrongful death suit for their child. Id. Â¶ 3, 384 P.3d at 1130. After recovering the funds and taking his attorney fee, Friesen charged over ninety-seven thousand dollars, without the client's understanding, to be kept on retainer, provide estate planning, and open accounts. Id. Â¶Â¶ 3-5, 384 P.3d at 1130-32. Friesen commingled the money, neglected to provide information about the money to the client for over two years, and did not set up bank accounts or provide estate planning because he said he was waiting on information from the clients. Id. Â¶Â¶ 6, 9, 13, 384 P.3d at 1132-33, 1135. Friesen had been disciplined twice previously, but not for behavior involving clients. Id. Â¶ 20, 384 P.3d at 1137.
Â¶46 Respondent, in one aspect, took his misconduct a step beyond Friesen when he committed simple conversion. But unlike Friesen, Respondent did not charge unreasonable fees without the client's knowledge. Respondent also responded to the Bar, even though he did not actually provide the requested information.
Â¶47 Finally, in Mayes, we disbarred an attorney who mishandled funds for minor children after the wrongful death of their mother and failed to cooperate in the grievance process. 2003 OK 23, Â¶Â¶ 1, 20-22, 66 P.3d at 400-01, 405-06. Mayes began probate and slowly depleted the trust account until it was overdrawn. Id. Â¶Â¶ 2, 19, 66 P.3d at 401, 404-05. Mayes's client filed a final accounting representing that the remaining funds were still in the account; the Court found this misrepresentation was proof that Mayes's behavior met the threshold of misappropriation. Id. Â¶Â¶ 8, 20-22, 66 P.3d at 402, 405-06. Mayes failed to provide a substantive response to the grievance regarding handling of funds or his delay in payment to the children. Id. Â¶ 12, 66 P.3d at 403. Mayes was involved in another discipline case during the proceedings. Id. Â¶ 14, 66 P.3d at 403.
Â¶48 Like Mayes, Respondent held funds belonging to minor children after the death of their mother and used them for his personal gain for an extended period. While Respondent did not fail to cooperate in the grievance process, he did fail to provide substantive response for his delays and mishandling of funds or to submit requested documentation. More importantly, unlike Mayes, Respondent did not actively misrepresent the status of the funds to the court or anyone else.
Â¶49 Few breaches of ethics are as serious as commingling and conversion of a client's money. State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, Â¶ 14, 642 P.2d 262, 267. Respondent neglected clients for over two-and-a-half years while engaging in egregious commingling of client trust account funds and using those funds to make loan payments twice. This abuse of entrusted funds is especially deplorable considering the funds were intended for minor children after their mother's untimely death. State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24, Â¶ 24, 393 P.3d 207, 216.
This Court will not tolerate attorneys who show total disregard for court mandates, particularly orders directing attorneys to safeguard moneys intended for minor children. Additionally, we will not tolerate attorneys who fail to keep client money and property safeguarded in a trust account, completely severed from the lawyer's operating account.
Id. While we did not find clear and convincing evidence of misappropriation in order to mandate disbarment, we found clear and convincing evidence of egregious commingling, simple conversion, and extended neglect. Because Respondent's actions extended over such a long period of time and were so extensive in nature, especially after his completion of the diversion program classes and the filing of the grievance, we find the appropriate discipline is suspension for two years and one day.
VI. ASSESSMENT OF COSTS
Â¶50 The Bar has asked this Court to assess costs in the amount of $2,359.65. RGDP 6.16 provides that where violations are proven, the costs shall be surcharged against the disciplined lawyer, unless remitted in whole or in part by the Supreme Court for good cause shown, and shall be paid within ninety days of the effective date of the opinion. Respondent did not respond to the Bar's motion to assess costs. As we find clear and convincing evidence of Respondent's misconduct, we grant the Bar's motion and order Respondent to pay full costs.
VII. CONCLUSION
Â¶51 Upon de novo review, we find clear and convincing evidence of Respondent's professional misconduct. Respondent is suspended for two years and one day. Respondent is ordered to comply with RGDP 9 and to pay the costs of this proceeding in the amount of $2,359.65.
RESPONDENT IS SUSPENDED FOR TWO YEARS AND ONE DAY; MOTION TO ASSESS COSTS GRANTED.
Concur: Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Colbert, Kane, JJ.
Disqualified: Combs, J.
FOOTNOTES
[1] The Trial Panel also found clear and convincing evidence of several other rules violations that were not pled. As a result, Respondent alleges that the Trial Panel improperly considered allegations that were not in the complaint. The Bar must allege sufficient facts to put the attorney on notice of the charges before the hearing or this Court will not find a violation or assess discipline from such alleged misconduct. State ex rel. Okla. Bar Ass'n v. Miskovsky, 1990 OK 12, Â¶ 24, 804 P.2d 434, 440. The Bar failed to recognize, allege, or put Respondent on notice of other allegations. The Trial Panel's recognition of additional potential misconduct, however, does not make the proceeding improper. See id. The Trial Panel disclaimed consideration of such evidence and potential violations when recommending imposition of discipline. Further, we are not bound by the Trial Panel's findings or recommendations, rather, the ultimate decision-making authority rests with this Court. State ex rel. Okla. Bar Ass'n v. Bednar, 2019 OK 12, Â¶ 3, 441 P.3d 91, 95.
[2] This list includes one "lien" that was never filed with the court.
[3] The record does not clearly show when the attorney fee or the liens were paid. Respondent made $32,000 of unexplained transfers out of his trust account to his operating and personal checking accounts from July through November 2014. We presume the $32,000 in unexplained transfers were made in order to pay the $1,858.90 in liens and the first $30,141.10 of the $33,000 attorney fee. The transferred $32,000 added to the $32,570.55 paid to Chaney equals $64,570.55.
[4] It is unclear what account this check was drawn on as the account number has been redacted from the copy of the check provided to this Court, but it was not drawn from the trust account. Bar Ex. 7, at OBA 58.
[5] Respondent paid Chaney $32,570.55 and Emerson $10,856.84. He also presumably paid $1,858.90 for liens on the estate and the $33,000 attorney fee. Altogether, $78,286.29.
[6] In his motion to interplead funds, Respondent stated that the amount he was entrusting to the court was owed to "heirs of the probate." Respondent interplead $23,573.86, Bar Ex. 5, at OBA 554, however, the amount due to the remaining heirs was $21,713.72. See Bar. Ex. 7, at OBA 56. It is unclear why the additional $1,860.14 was included.
[7] The nine cash withdrawals combined to $2,820. Bar Ex. 17, at OBA 177-78, 205-07, 225-26, 403-06, 419-22, 437-38, 471-74, 475-78, 491-94.
[8] From July to December 2014, Respondent made eleven transfers to his personal checking account totaling $17,500. Bar Ex. 17, at OBA 119, 125, 131, 141, 147, 153, 159. From January to December 2015, Respondent made 28 transfers to personal checking, totaling $43,200. Id. at OBA 159, 167, 173-76, 183-86, 191, 197, 203-08, 219-22, 223-28, 235-38, 239, 255, 265-68, 283, 289, 297, 303. From January to December 2016, Respondent made 32 transfers to personal checking, totaling $26,819.90. Id. at OBA 313, 319, 329, 335-38, 341-44, 345, 357, 379, 391, 413-16, 423, 435-40, 445-48, 449-52. In January and February 2017, Respondent made eight transfers to personal checking, totaling $3,380.36. Id. at OBA 453, 479. All seventy-nine transfers to personal checking add up to $90,900.26.
[9] "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action . . . " RGDP 1.3, 5 O.S.2011, ch.1, app. 1-A.
[10] "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." ORPC 1.1, 5 O.S.2011, ch.1, app. 3-A.
[11] "A lawyer shall act with reasonable diligence and promptness in representing a client." ORPC 1.3, 5 O.S.2011, ch.1, app. 3-A.
[12] (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account . . . . Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
. . . .
(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
. . . .
ORPC 1.15, 5 O.S.2011, ch.1, app. 3-A.
[13] "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."ORPC 3.2, 5 O.S.2011, ch.1, app. 3-A.
[14] "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." ORPC 8.4(c), 5 O.S.2011, ch.1, app. 3-A.
[15] Earned fee deposit: Bar Ex. 17, at OBA 463-64. Transfers to personal checking: Id. at OBA 119, 125, 131, 141, 147, 153,159, 167, 173-76, 183-86, 191, 197, 203-08, 219-22, 223-28, 235-38, 239, 255, 265-68, 283, 289, 297, 303, 313, 319, 329, 335-38, 341-44, 345, 357, 379, 391, 413-16, 423, 435-40, 445-48, 449-52, 453, 479. Cash withdrawals: Id. at OBA 177-78, 205-07, 225-26, 403-06, 419-22, 437-38, 471-74, 475-78, 491-94.
[16] The Bar argues that Respondent converted or misappropriated client funds, evidenced by him not at all times maintaining a sufficient balance in his client trust account to pay money owed to the clients. But Respondent's egregious commingling requires that the Bar prove Respondent did not have funds in all commingled accounts combined for that argument to succeed. The Bar only submitted records for Respondent's client trust account, but did not provide records or additional information regarding Respondent's operating account, personal checking account, loans, potential second trust account, or other accounts he made transfers to. Given the egregious levels of commingling in this case and the Bar's argument regarding low balance, a thorough review of all account records was called for. The Bar did not do that or attempt to reconstruct what happened to the money -- failing to note that its evidence clearly and convincingly showed Respondent made loan payments out of client trust account funds and failing to prove its low-balance argument by clear and convincing evidence.
[17] (a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. 
ORPC 1.4, 5 O.S.2011, ch.1, app. 3-A.
[18] In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.
ORPC 1.7 cmt. 27, 5 O.S.2011, ch.1, app. 3-A.